IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**CHARLES RICHARD BURKE,**

    **Movant,**

v.           **Civil Action No. 3:15-cv-00419**
        **(Criminal No. 3:10-cr-00224)**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court is Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 187). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that Movant's Motion be denied and this matter be dismissed, with prejudice, and removed from the docket of the Court. Given that the undersigned conclusively **FINDS** that Movant is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

**I.**     **Background**

On March 6, 2012, Movant Charles Richard Burke ("Burke") entered into a written agreement with the United States in which he agreed to plead guilty to one count of

conspiracy to distribute 280 grams or more of cocaine base and a quantity of oxycodone. (ECF No. 152).[1] In exchange for the guilty plea, the United States agreed not to file an information under 21 U.S.C. § 851 and to dismiss a second count against Burke involving the distribution of cocaine base. (*Id.* at 1-2). The written agreement clearly set out the maximum penalty to which Burke was exposed by his guilty plea, including imprisonment for a mandatory minimum of 10 years to as long as life imprisonment. (*Id.* at 2). In addition, the agreement expressly noted that sentencing was within the sole discretion of the Court and no representations or promises had been made as to a specific sentence. (*Id.* at 5).

On April 23, 2012, Burke appeared before the presiding district judge to enter his guilty plea. (ECF No. 177). The Court proceeded to explain the consequences of Burke's guilty plea, including the potential loss of civil rights, sentencing exposure, terms of supervised release, potential monetary penalties, and loss of federal benefits. (*Id.* at 25–31). The Court explicitly advised Burke that he was subject to a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment. (*Id.* at 25). Burke acknowledged his understanding of the potential sentence and that the sentence imposed by the Court "could be different from any estimate" his lawyer had given him. (*Id.* at 25-27). Finally, the Court questioned Burke regarding the voluntary nature of his guilty plea:

> Court: Has anyone forced you, threatened you, or talked you into pleading guilty against your will?
>
> Burke: No, sir.
>
> Court: Are you acting voluntarily and of your own free will in entering this guilty plea?
>
> Burke: Yes, sir.

---

[1] All citations to the record refer to documents filed in Burke's underlying criminal case.

| | |
|---|---|
| Court: | Is pleading guilty your own idea? |
| Burke: | Yes, sir. |
| Court: | Has anyone promised you something or told you anything different from what we've discussed here in court today to get you to plead guilty? |
| Burke: | No, sir. |
| Court: | All right. I find your guilty plea is voluntary. Now, at this time do you have any questions or seconds thoughts about pleading guilty? |
| Burke: | No, sir. |

(*Id.* at 31–32). In conclusion, the Court stated, "I find Mr. Burke is fully competent, there's a sufficient factual basis [for the guilty plea], he understands the nature of the charge, he understands the rights he's giving up, and his plea is voluntary." (*Id.* at 32). The Court accepted Burke's plea and adjudged him guilty of the conspiracy charge. The Court deferred acceptance of the plea agreement pending completion of a Presentence Investigation Report ("PSR").

A PSR was prepared prior to sentencing, again confirming the ten-year mandatory minimum sentence and the possibility of life in prison. (ECF No. 162). Burke's base offense level was calculated to be 36 given the amount of controlled substance attributable to Burke. (*Id.* at 8). A four-level enhancement was added for Burke's role as a leader or organizer of the conspiracy, making his adjusted offense level 40. (*Id.* at 8). The Probation Officer commented that Burke qualified as a career offender; however, as his adjusted offense level was greater than the guideline level provided under the career offender table, the career offender level was not used. (*Id.*) Burke was given a three-level deduction for acceptance of responsibility, resulting in a total offense level of 37. (*Id.* at 9). Burke's

3

criminal history points placed him in category III. Nonetheless, his qualification as a career offender increased his criminal history category to VI. (*Id.* at 10). Based on a total offense level of 37 and a criminal history category of VI, Burke's guideline range was 360 months to life in prison. (*Id.* at 13). Burke raised two objections to the final PSR, challenging the officer's application of the career offender criminal history category and his designation as a leader or organizer of the conspiracy. (ECF No. 160).

Sentencing was held on September 4, 2012. (ECF No. 175). Burke appeared in person and with counsel pursuant to his guilty plea. The Court began by confirming that Burke had read the PSR and reviewed it with his attorney. (*Id.* at 2). After establishing that Burke understood the contents of the PSR, the Court addressed Burke's objections to the report. (*Id.* at 3–11). With respect to the four-level enhancement for Burke's role as an organizer or leader, the Court and the parties agreed that Burke should receive only a two-level enhancement for his role in the conspiracy. (*Id.* at 3-4).

Next, the Court heard argument from the parties on the application of the career offender criminal history category. (*Id.* at 4-10). Burke's counsel argued that when calculating Burke's prior convictions under the career offender guidelines, the Probation Officer incorrectly counted the same criminal activity as two separate convictions. According to counsel, Burke was convicted on drug trafficking charges in federal court in 1994 and drug trafficking charges in state court in 1996; however, the convictions arose from the same criminal activity, which occurred on November 8, 1993. Consequently, as there was no intervening arrest between the offenses, they should not have been counted as two separate convictions. The Court considered counsel's argument, but rejected it, pointing out that Burke was convicted of more than one offense in federal court. While Burke was convicted of one count that involved the same November 1993 conduct forming

4

the basis of his state convictions, he was also convicted of a separate controlled substance offense that occurred prior to September 29, 1993. The Court stated: "I agree that in the federal prosecution, that [Burke] was convicted of a count that is for the same conduct as he had been convicted or ultimately got convicted under the state, but in each of these instances there were other felony drug counts." (*Id.* at 7). Ultimately, the Court concluded that because Burke's convictions stemmed from two different charging documents, were initiated by two separate sovereigns, were imposed at different times, and included two distinct instances of drug trafficking, the convictions were properly counted separately, qualifing Burke as a career offender. (*Id.* at 9-10). After making the adjustments and deducting levels for acceptance of responsibility, the Court concluded that Burke's offense level was 35 and his criminal history category was VI, resulting in a guidelines range of 292 to 365 months' imprisonment. (*Id.* at 14).

Counsel for Burke then argued for a downward variance. (*Id.* at 15–16). After hearing from counsel and from Burke, the Court applied a two-level reduction of the offense level to account for the disparate treatment given to crack cocaine versus powder cocaine. (*Id.* at 19-20). Next, the Court addressed the career offender criminal history category, stating:

> I do believe that the two convictions that have been argued here today constitute separate convictions and therefore require under the guidelines the application of the career offender guideline. However, in this case I would find that I think that that results in an excessive level of punishment … I don't think that a sentence based purely on the criminal history category of VI is appropriate. That's what the career offender provision would dictate, but I think a lower sentence is more appropriate. So I'm going to consider you, rather than falling into the top category of criminal history, falling in category V. And at an offense level of 33, with a criminal history category of V, the guideline range would be 210 to 260 months. I'm going to impose a sentence of 236 months.

(Id. at 20-24). On September 11, 2102, Burke appealed his sentence to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"), arguing that the district court erred in determining that his prior state and federal drug convictions were separate sentences under the career offender guidelines. (ECF Nos. 166, 178). On June 6, 2013, finding no error, the Fourth Circuit affirmed the sentence. (ECF No. 178).

On January 8, 2015, Burke filed the instant motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. (ECF No. 187). Burke asserts three grounds in support of his motion. First, Burke claims that his counsel provided ineffective assistance by advising him that his prior state and federal drug convictions would be counted as separate predicate drug convictions exposing him to a mandatory life sentence. (*Id.* at 5). Burke claims that based upon this incorrect advice, he decided to plead guilty rather than face a mandatory life sentence. Second, Burke claims that his counsel also incorrectly advised him that his federal and state convictions would **not** be counted separately for purposes of the career offender guidelines. (*Id.* at 7). Believing that he would not face the enhanced penalties associated with career offender status, Burke pled guilty. Finally, Burke alleges that his counsel erred by failing to request a rehearing or rehearing *en banc* from the Fourth Circuit and suggests that the three-judge panel that decided his appeal applied an incorrect legal standard. (*Id.* at 10).

## II. Standard of Review

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence

6

was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ.A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006). In the context of a guilty plea, a movant alleging ineffective assistance of counsel carries a heavy burden. The movant must not only rebut the presumption that counsel performed within the wide range of reasonable professional competence, but must also demonstrate that "there is a reasonable probability that, but for counsel's errors, [movant] would not have pleaded guilty and would have insisted on going to trial." *See Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

### III. Discussion

Having considered each of Burke's grounds in turn, and for the reasons set forth below, the undersigned **FINDS** Burke's motion to be without merit.

#### A. Advice Regarding the Mandatory Life Sentence

First, Burke claims that his attorney provided erroneous advice regarding the effect of an information filed under 21 U.S.C. § 851 and, based upon that advice, Burke pled guilty to the conspiracy charge. Burke claims that his attorney advised him that if the United States filed an information, Burke would be exposed to a mandatory life sentence without the possibility of release. However, Burke actually did not have the requisite number of prior convictions to support such a severe sentence. Burke alleges that he would not have pled guilty except for the potential of a mandatory life sentence.

Title 21 U.S.C. § 841 provides enhanced penalties for drug traffickers with a history of prior felony drug convictions. Under the statute, an individual having two or more final convictions for felony drug offenses, who is charged with a controlled substance offense

that carries a ten-year mandatory minimum sentence, faces the enhanced sentence of mandatory life imprisonment without release. 21 U.S.C. § 841(b)(1)(A). In this case, Burke was convicted of drug-related offenses in 1994 and again in 1996, which his attorney believed would expose Burke to the mandatory life sentence. Burke argues that his attorney was wrong. Relying on the Fourth Circuit's decision in *United States v. Blackwood,* 913 F.2d 139 (4th Cir. 1990), Burke contends that his convictions would not have been counted separately; thus, Burke did not face a mandatory life sentence.

Notwithstanding Burke's insistence that his prior convictions did not amount to the "two or more" required under 21 U.S.C. § 841, Burke's first ground for relief is without merit. Burke's reliance on the Fourth Circuit's decision in *Blackwood* is misplaced for the simple reason that the ruling is based on an entirely different factual premise. Indeed, when applying the facts surrounding Burke's prior convictions, his counsel's advice was entirely accurate. Therefore, Burke cannot meet the first prong of the *Strickland* test.

Documents supplied by Burke demonstrate that, on May 23, 1994, Burke signed a plea agreement admitting guilt to three counts (Counts 1, 2, and 4) of a five-count indictment pending in the United States District Court for the Northern District of Ohio. (ECF No. 187-2 at 10-18). Count 1 charged Burke with possession with the intent to distribute 18.24 grams of a mixture containing cocaine base during a period that ended on September 29, 1993. (*Id* at 10). Count 2 charged Burke with carrying a firearm during and in relation to drug trafficking activity that ended on September 29, 1993. (*Id.* at 11). Count 4 charged Burke with possessing with the intent to distribute 7.06 grams of a mixture containing cocaine base on November 8, 1993. (*Id.*). Burke was later convicted of these offenses and sentenced to 60 months' imprisonment on each of Counts 1 and 4,

8

to run concurrently, and 60 months imprisonment on Count 2, to run consecutively to the other sentences. (ECF No. 162 at 9).

Two years later, on August 28, 1996, Burke was convicted of three felony counts of drug trafficking in the Court of Common Pleas of Cuyahoga County, Ohio. (ECF No. 187-2 at 2-6). All three state offenses involved the possession and intended distribution of cocaine on November 8, 1993. Consequently, the criminal activity giving rise to Burke's convictions in the Court of Common Pleas corresponded to Count 4 of the federal indictment. By comparison, Burke's other two convictions in the federal proceeding involved criminal activity that occurred on and before September 29, 1993, which was not addressed in Burke's state court case.

Burke contends that the 1996 state court conviction does not count as a separate conviction under 21 U.S.C. § 841, because it was already counted as part of the federal convictions. Burke apparently believes, incorrectly, that his prior federal court convictions counted together as one conviction, and that conviction was subsumed in the subsequent state court conviction. What Burke fails to appreciate, however, is that "although two of the convictions occurred on the same day, because they resulted from two separate 'episodes of criminality,' they constitute two separate convictions for the purpose of sentencing under § 841(b)(1)(a)." *United States v. Morrison*, 364 F. App'x 33, 35 (4th Cir. 2010) (quoting *United States v. Ford,* 88 F.3d 1350, 1366 (4th Cir.1996)). Burke participated in and was convicted of two distinct episodes of drug trafficking; one that ended on September 29, 1993, and the second that occurred on November 8, 1993. As such, he had two prior convictions under 21 U.S.C. § 841. *See United States v. Holmes*, 384 F. App'x 219, 228 (4th Cir. 2010) ("When evaluating whether convictions are from separate and distinct criminal episodes, we consider, among other things, whether the

9

time between the crimes underlying the convictions allowed the defendant sufficient time 'to make a conscious and knowing decision to engage in another drug sale.'") (quoting *United States v. Letterlough,* 63 F.3d 332, 337 (4th Cir.1995)); *see, also, United States v. Robinson*, 92 F. App'x 48, 49 (4th Cir. 2004) ("[Defendant's] convictions for possession with intent to sell and deliver crack to the same undercover officer on two days one week apart at the same location were separate and distinct criminal episodes.") (citing *See United States v. Williams,* 187 F.3d 429, 431 (4th Cir.1999)); *Gonzalez v. United States*, No. 1:04CR328, 2005 WL 2230280, at \*4 (N.D. Ohio Sept. 13, 2005), *aff'd,* 512 F.3d 285 (6th Cir. 2008) (adopting the rationale in *Blackwood* and clarifying that the date on which each crime of conviction is committed—not their joinder in one indictment, plea agreement, or judgment--is the key to whether or not the convictions arise from the same criminal episode).

In contrast to Burke's situation, the defendant in *Blackwood* had two prior state convictions for possession of marijuana; however, the convictions arose from criminal activity that occurred on the same day and likely involved marijuana from the same criminal transaction. *Blackwood*, 913 F.2d at 144–45. In *Blackwood*, the defendant was arrested for possessing a large quantity of marijuana in his pick-up truck. Less than two hours later, officers executed a search warrant at a motel room where the defendant was staying and recovered an even larger quantity of marijuana. *Id.* The defendant was charged in two separate bills for possession of marijuana; one for the marijuana in the pick-up truck, and the other for the marijuana found in the motel room. The bills were consolidated for trial, and the defendant was convicted. He received two consecutive sentences, which, on resentencing, were set to run concurrently.

In a later federal criminal proceeding against the defendant, the sentencing court counted the two convictions arising from essentially the *same possession of marijuana* as separate predicate convictions when applying enhanced penalties. The Fourth Circuit rejected that interpretation of 21 U.S.C. § 841(b), stating "Congress has indicated both in § 841(b) itself and elsewhere that the language 'prior' or 'previous convictions,' when used for sentencing enhancement, means separate criminal episodes, not separate convictions arising out of a single transaction." *Blackwood*, 913 F.2d at 145–46. Clearly, that is not the factual scenario present in the instant action.

Here, Burke had two or more prior convictions for separate criminal episodes that occurred more than a month apart. Therefore, he was subject to a mandatory life sentence under 21 U.S.C. § 841. Accordingly, Burke's counsel provided him with the correct advice. Furthermore, by his own admission, Burke knowingly and intentionally entered a guilty plea in order to avoid a mandatory life sentence without the possibility of release. Thus, Burke is unable to establish either prong of the *Strickland* test to support his first ground for relief.

### B. Advice Regarding the Career Offender Guidelines

Next, Burke complains that his counsel incorrectly advised him that he would not be considered a career offender, and, on that advice, Burke pled guilty. At the same time, Burke attaches a letter from his attorney that contradicts the factual basis of this ground for relief. (ECF No. 187-1 at 2-3). In the letter, Burke's counsel recounts his conversations with Burke regarding the career offender guidelines. Counsel notes Burke's insistence that he had only one prior conviction, despite discovery to the contrary. Counsel reminds Burke of their conversation in which counsel informed Burke that if "the PSR showed two previous drug convictions" counsel would argue against application of the career offender

11

status," but if the argument failed, Burke "would be considered a career offender based upon those two previous convictions." (*Id.*).

The record unequivocally supports the version of events described by counsel in his letter, rather than the events outlined by Burke in his motion. First, the letter has inherent credibility given that counsel wrote it before Burke filed his § 2255 motion. Consequently, counsel had no reason to dispute Burke's recollection, other than to keep the record straight. Moreover, the sentencing transcript confirms that counsel argued in opposition to Burke's career offender status, asserting that Burke's two prior felony convictions should not be considered as separate convictions under the guidelines. Ultimately, as the United States points out, the sentencing court did not apply the career offender guidelines in determining Burke's sentence. Instead, the Court granted Burke a variance, sentencing him within a range comparable to what Burke would have faced in the absence of career offender status.

Lastly, the undersigned finds implausible Burke's contention that he would not have pled guilty if he knew he was a career offender. Burke conceded in his § 2255 motion that he pled guilty to avoid a mandatory life sentence without the possibility of release. Considering that he would have been subject to that very sentence if he had proceeded to trial, there simply is no reasonable probability that, but for counsel's alleged career offender error, Burke would not have pled guilty and would have insisted on going to trial. Therefore, the undersigned finds that Burke cannot establish either prong of the *Strickland* test, and like his first ground, this ground for relief is unavailing.

### C. Counsel's Failure to Seek a Rehearing

As his final argument, Burke asserts that his counsel erred by not requesting a rehearing after the Fourth Circuit affirmed Burke's sentence. The law is well settled that

12

an attorney does not provide ineffective assistance under *Strickland* by failing to make a frivolous motion. *See Moody v. Polk,* 408 F.3d 141, 151 (2005). Despite Burke's insistence that he did not qualify as a career offender, the Fourth Circuit clearly and succinctly explained why his prior sentences were properly counted separately under USSG § 4A1.2(a)(2) and §4B1.1. (ECF No. 178). Burke's contentions that the Fourth Circuit reached this conclusion in error, and that the decision in *United States v. Breckenridge,* 93 F.3d 132 (4th Cir. 1996) supports his position, are without merit.

In *Breckenridge,* the Fourth Circuit considered how to count a defendant's prior sentences for purposes of determining career offender status using the sentencing guidelines in effect at the time. However, in 2007, the guidelines changed, "setting forth a more definitive test for assessing whether prior sentences are to be counted separately." *United States v. Rooks*, 596 F.3d 204, 212 (4th Cir. 2010). Under the modified version of the guidelines, *inter alia*, "prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." USSG § 4A1.2(a)(2). This language was in effect at the time of Burke's sentencing in 2012 and had been applied for a number of years. *See Rooks,* 596 F.3d at 213 ("In general, a sentencing court is obliged to 'use the Guidelines Manual in effect on the date that the defendant is sentenced.'") (quoting USSG § 1B1.11(a)). Although Burke implies that the district court violated the Constitution's *Ex Post Facto* Clause by using the 2011 version of the Guidelines Manual, he makes no showing to validate that suggestion. Without doubt, Burke's prior sentences were properly counted as separate sentences under the Guidelines Manual in effect at the time of his sentencing. In addition, given that the Fourth Circuit explicitly considered the legality of Burke's sentence, and found it to be legal under *Rooks*, it was reasonable to conclude that the

13

Fourth Circuit implicitly rejected any *Ex Post Facto* Clause argument. Accordingly, there was no good faith basis for counsel to seek a rehearing of the Fourth Circuit's decision. As Burke has failed to show ineffective assistance of counsel or prejudice in relation to the Fourth Circuit's decision, his final ground for relief also fails.

## IV. Proposal and Recommendations

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 187), be **DENIED**, and that this civil action be **DISMISSED** and removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Movant shall have fourteen days (filing of objections) and three days (for mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this deadline may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727

F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and Respondent.

**FILED:**  January 27, 2017

_____
Cheryl A. Eifert
United States Magistrate Judge